SHIRLEY S. ABRAHAMSON, C.J.
¶ 49. (dissenting). The OLR charged Attorney Johns with two violations of the Rules of Professional Conduct for Attorneys. I conclude that the two violations were proved, but I would not impose any discipline.
¶ 50. Attorney Johns agrees (as he must) that he violated the Rules by failing to notify the clerk of the supreme court and OLR in writing of his felony conviction. Attorney Johns disputes whether his conviction of vehicular homicide violated the Rules.
¶ 51. The referee agreed with Attorney Johns that he violated only one provision of the Rules of Professional Conduct for Attorneys, namely failing to notify the clerk of the supreme court and the OLR in writing of his felony conviction.[1]
¶ 52. The per curiam opinion concludes that Attorney Johns' conduct does not violate the Rules in either respect.
¶ 53. I disagree with the court's disposition of the present case and address the two charges in parts A and B of this dissent.
¶ 54. Because this case, along with two other pending cases and an open rules petition hearing and open rules petition conference, raise important con *765 cerns about the present lawyer regulatory system, I write stating the requests previously made for the court to initiate a study of the lawyer regulatory system. The lawyer regulatory system now in effect was instituted about 15 years ago. It is time to examine it to determine whether revisions are needed. The director of the Office of Lawyer Regulation agrees. I discuss this issue in Part C of this dissent.
A
¶ 55. With regard to the notification violation, Attorney Johns did not notify the OLR and the clerk of the Supreme Court of his felony conviction in writing, as SCR 21.15(5) requires. He did speak with a named employee at OLR. OLR does not deny that this oral communication occurred. Attorney Johns does not claim he spoke with or wrote the clerk of the Supreme Court about his conviction.
¶ 56. The rule is straightforward: It requires a written notice to two offices. A writing constitutes official notice to the OLR and the court; writing is key to the reporting requirement and attorney discipline. A written communication avoids evidentiary proceedings to determine who said what to whom and when.
¶ 57. Furthermore, the rule requires communication to both the OLR and the clerk's office. Attorney Johns failed to notify the clerk's office in any way. No one asserts he complied with notification to the clerk's office.
¶ 58. The per curiam opinion characterizes the present case as a technical violation. I do not know what a "technical violation" means. Attorney Johns' notification to OLR was not in writing and no notification was made to the clerk of the supreme court.
*766 ¶ 59. The court's conclusion that Attorney Johns did not violate SCR 21.15(5) is clearly contrary to the stipulated facts and the plain, unambiguous text of the Rules.
¶ 60. The court has discretion whether to impose discipline. SCR 21.16. In light of the circumstances of the case, including Attorney Johns' stellar record for the last decade, I would not impose any discipline for this violation.
B
¶ 61. The felony conviction presents a more difficult issue. The commission of a criminal act by a Wisconsin-licensed lawyer does not in and of itself automatically constitute professional misconduct. The facts and circumstances of an offense must be considered to determine whether it reflects on the lawyer's honesty, trustworthiness, or fitness as a lawyer. SCR 20:8.4(b).
¶ 62. This felony drunk driving conviction was apparently Attorney Johns' only drunk driving offense before or after the homicide. Nothing in the record before us indicates he has an alcohol-related problem. The district attorney's office had discretion whether to prosecute Attorney Johns. It prosecuted. The trial court had discretion in sentencing Attorney Johns for the homicide. It imposed jail time and probation.
¶ 63. As the per curiam opinion explains, drunk driving has been viewed differently by different courts in attorney discipline cases.[2]
*767 ¶ 64. Drunk driving is a major public safety issue in Wisconsin and across the country. According to the National Highway Traffic Safety Administration, in 2012 an average of one alcohol-impaired driving fatality occurred every 51 minutes.[3] In 2012, 10,322 people were killed in alcohol-impaired driving crashes.[4] All drivers are — or should be held to be — aware of the dangers of drunk driving. That drunk driving may be prosecuted as a crime is also common knowledge.
¶ 65. Attorney Johns was engaged in an evening of drinking with his family. His blood alcohol level tested way over the legal limit. He pled guilty to one count of homicide by use of a vehicle with a prohibited alcohol concentration. The one-vehicle accident resulting in the death of Attorney Johns' passenger/brother was a tragedy for the entire family. The tragedy did not end that night. The tragic aftermath includes a criminal prosecution, a felony conviction, jail time, probation, and this disciplinary action.
¶ 66. This case has to be considered, however, in the context of the scourge of drunk driving in our society. Although the totality of the circumstances of the isolated homicide in the instant case presents a very close discipline case — and my sympathies are with Attorney Johns and his family — I would hold that the felony conviction constituted a violation of the Rules.
¶ 67. I would not, however, impose any discipline for this violation. The court has discretion whether to *768 impose discipline. SCR 21.16. In light of the circumstances of the case, including Attorney Johns' stellar record for the last decade, discipline is not warranted.
C
¶ 68. This case, along with the two Osicka cases,[5] the Kratz[6] case, and rule petitions recently filed[7] and hearings on filed rules petitions involving the OLR, raises broader issues than those posed by these and other individual cases.
¶ 69. For example, the very prosecution of this case 10 years after the incident seems to have troubled the referee and is troubling the court, as is the wisdom of OLR's appeal. Delays in initiating and completing discipline cases are also evident in Osicka and Kratz. Other issues raised include OLR's discretion in charg *769 ing, dismissing charges, and diversion; whether and what consideration is given in lawyer discipline to OLR's scarce resources; the extent to which the OLR should consider mercy, forgiveness, and the wishes of the victims; whether respondent lawyers should be able to appear before the Preliminary Review Committee; and whether the Preliminary Review Committee should be disbanded inasmuch as apparently over 90% of the OLR's recommendations are accepted.
¶ 70. The Kratz case raised the issue of the role of partisan politics and media publicity in discipline proceedings, as Justice Prosser's dissent points out. Members of the Court have also raised the question of the wisdom of changing the rules to allow plea bargaining. These are only some of the significant and troubling issues illustrated in these cases and raised in rule petitions and the hearings on recent rule petitions.
¶ 71. On October 25, 2013, Keith Sellen appeared advocating a rule petition regarding lawyer discipline. I suggested to him that an impartial, objective review of OLR practices and procedures should be conducted.[8] Fifteen years have elapsed since the OLR system was instituted. Several anomalies and proposed amendments have been brought to the court's attention. I *770 believe it is time for a review rather than piecemeal adjustments at this time. Keith Sellen, director of the OLR, agreed with the proposal for a review. Justices Ann Walsh Bradley, N. Patrick Crooks, and David T. Prosser expressed interest in and support for such a proposal at the October 2013 open rules petition conference.
¶ 72. Several pending rule petitions requesting changes in OLR's practices and procedures were the result of a review committee that the chair of the OLR Board of Administrative Oversight created at my suggestion.
¶ 73. Instead of examining and adopting these proposals piecemeal, I advocated dealing with the subject matter of these rule petitions as well as other issues relating to OLR by an objective review of all OLR practices and procedures. A review by persons knowledgeable in and working in other state lawyer discipline systems might be a good first step. Other justices proposed different tacks, including appointing a committee of diverse stakeholders to determine the nature and course of the review. I was (and am) open to taking a different or broader approach than I originally explored.
¶ 74. The court has not resolved a proposal for such a review of the OLR disciplinary system. Some members of the court appeared to take the view that any such proposal was not germane to the subject of the petitions; that any such proposal was not itself a rules petition; and that consequently any proposal could not be discussed at an open rules petition conference without the court first authorizing an open discussion in closed conference.
¶ 75. I intend to continue to seek an open conference in which we can discuss instituting an impartial, *771 objective review of OLR practices and procedures. Such a review is germane to all the pending rules petitions. In any event, I can and shall, if need be, draft a proposal in rules petition format if that's what it takes.
¶ 76. This matter should be discussed by the court in open conference, not behind closed doors. Lawyer discipline is of great importance to the court, the lawyers in the state, and the public.
* * * *
¶ 77. For the reasons set forth, I do not join the per curiam opinion, and I write to urge an impartial, objective review of our lawyer discipline system.

 The referee concluded that Johns did not violate the Rules by his felony conviction of vehicular homicide of his brother because the conviction does not reflect on Attorney Johns' honesty, trustworthiness, or fitness as a lawyer.

 See also Alexandra Sorota & Shelley Lambert, Driving on the Wrong Side of the Road: How Lawyers are Sanctioned for Vehicular Homicide in New York and the District of Columbia, 15 Geo. J. Legal Ethics 865 (2002); Rachna K. Dhanda, When *767 Attorneys Become Convicted Felons: The Question of Discipline by the Bar, 8 Geo. J. Legal Ethics 723 (1995).

 National Highway Traffic Safety Administration, U.S. Department of Transportation, DOT HS 811 870, Traffic Safety Facts: 2012 Data, available at http://www-nrd.nhtsa.dot.gov/ Pubs/811870.pdf (last visited March 24, 2014).

 Id.

 OLR v. Osicka, 2014 WI 33, 353 Wis. 2d 656, 847 N.W.2d 343, and OLR v. Osicka, 2014 WI 34, 353 Wis. 2d 675, 847 N.W.2d 333, mandated of even date. Although Justice Prosser joined in prior cases disciplining Attorney Osicka, Justice Prosser dissents, asserting that OLR is "piling up legal costs that it expects Osicka to pay.... These prosecutions raise questions about how OLR uses its limited resources to protect the public interest — questions about its priorities. Because the answers to questions of this sort are seldom addressed, I feel compelled to respectfully dissent." Osicka, 2014 WI 33, ¶¶ 57, 58 (Prosser, J., dissenting).

 OLR v. Kratz, 2014 WI 31, 353 Wis. 2d 696, 851 N.W.2d 219, mandated of even date.

 See OLR's Board of Administrative Oversight and State Bar petition (Rule Petition 13-04) to amend the rules relating to referees in the lawyer regulation system; OLR's Board of Administrative Oversight and State Bar petition (Rule Petition 13-06) relating to stipulations in lawyer disciplinary proceedings; and OLR's Board of Administrative Oversight petition (Rule Petition 13-12) relating to public notice of formal investigations.

 For a provocative, different view of state lawyer discipline systems (which are now modeled on criminal prosecutions), see Jenifer Gerarda Brown & Liana G.T. Wolf, The Paradox and Promise of Restorative Attorney Discipline, 12 Nevada L. J. 253 (2012). The authors suggest new therapeutic approaches including diversionary programs, deliberation and decision making by a diverse group of stakeholders, increased victim and public participation, and discussions that focus on repairing the damage caused by the offending attorney to build trust between attorneys and their clients, to foster professional conduct, to prevent ethical misconduct, to improve the morale of practicing lawyers, and to protect the public.